## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **CHENG USA, INC., d/b/a ARTERRA DISTRIBUTION AND WFCO TECHNOLOGIES,** | **CASE NO:** |
| **Plaintiff,** | **JUDGE:** |
| **v.** | **JURY TRIAL DEMANDED** |
| **KUNSHAN JINHUI NEW ENERGY TECHNOLOGY CO., LTD. d/b/a BESTRENOGY,** | |
| **Defendant.** | |

## **COMPLAINT**

Plaintiff Cheng USA, Inc. ("Cheng") demands a jury trial and alleges as follows:

## **PARTIES**

1.     Cheng is a corporation organized and existing under the laws of the State of Indiana and doing business in the State of Indiana. Cheng holds by assignment all rights, title, and interest in the below-described patent. Cheng's principal place of business is located at 2021 Aeroplex Drive, North Elkhart, Indiana 46514. Cheng also does business as Arterra Distribution and WFCO Technologies.

2.     Cheng alleges on information and belief that Defendant Kunshan Jinhui New Energy Technology Co., Ltd. d/b/a Bestrenogy ("Bestrenogy") is a business entity headquartered in Jiangsu, China.

3.     Based on representations it made to the United States Patent and Trademark Office in connection with its application for trademark protection over its use of the Bestrenogy mark, Bestrenogy is located at Room 207, 2nd Floor, Building 1, No. 154, Shanpu West Rd., Qiandeng Town, Kunshan, Suzhou, Jiangsu, China 215300.

1

4.     Based on representations it made to the United States Patent and Trademark Office in connection with its application for trademark protection over its use of the Bestrenogy mark, Bestrenogy has been doing business in the United States since at least as early as April 28, 2023.

5.     Based on representations it made to the United States Patent and Trademark Office in connection with its application for trademark protection over its use of the Bestrenogy mark, Bestrenogy sells a variety of electronic devices, including inverters, battery chargers, battery jump starters, power switches, rechargeable batteries, and uninterruptible electrical power supplies.

6.     On information and belief, Bestrenogy sells its products in the United States through various eCommerce platforms, including, but not limited to eBay and the Amazon Marketplace under the name "Bestrenogy."

7.     Based on the United States Patent and Trademark Office's public records, Bestrenogy is currently represented by counsel in the United States. Bestrenogy's counsel is Wei Gu, who is located at 262 E Garvey Ave., #D, Monterey Park, California, 91755, and can be contacted by email at the addresses listed on the United States Patent and Trademark Office's website.

## NATURE OF THE ACTION

8.     This is a civil action for willful patent infringement under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq*. and for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)-(B).

## JURISDICTION

9.     The Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over the Defendant under Indiana's long-arm

statute because the Defendant does business in Indiana. Ind. Trial R. 4.4(A)(1). This Court also has personal jurisdiction because the Defendant regularly does or solicits business in Indiana, or derives substantial revenue from goods used or consumed in Indiana, and caused personal injury in Indiana by an act from outside Indiana. Ind. Trial R. 4.4(A)(3). Additionally, this Court has personal jurisdiction over the Defendant because the Defendant has supplied goods or materials furnished or to be furnished in Indiana. Ind. Trial R. 4.4(A)(4).

11.     This Court has personal jurisdiction under the Due Process Clause because the Defendant had sufficient minimum contacts with Indiana by falsely advertising and selling products to consumers in Indiana through one or more highly interactive commercial websites, such that Defendant could reasonably anticipate being brought into court in this forum.

## VENUE

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this judicial district. In addition, venue is properly found in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) because Defendant, who is not a resident in the United States, is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

13.     Cheng is a leading developer, marketer, and distributor of battery chargers and electronic devices with a focus on products for extending functionality of motor vehicles and related components. Cheng markets and distributes a variety of branded products for safely and efficiently charging batteries.

14.     One of Cheng's most successful products is the WF-9855-AD Deck Mount Converter Charger (hereinafter, the "WF-9855 battery charger"). The WF-9855 battery charger

automatically determines a type of battery being charged, and automatically updates a charging profile to charge said battery. By correctly updating the charge profile for the battery based on type, the WF-9855 charger optimizes power provided to the battery and extends the life of the battery.

15.    The WF-9855 battery charger has a propriety name within a series of electrical products sold under the WFCO Technologies brand. Series of products under this brand include the WF-68100AD, the WF-8900-AD, the WF-8900-AD MBA, the WF-5300, and the WF-5100 series. Notably, each of these series includes products with naming conventions starting with "WF" and each product, including the WF-9855 battery charger, is packaged with the respective name starting with "WF."

16.    The WF-9855 battery charger is distributed by Arterra Distribution. The WF-9855 is packaged with a label indicating "Arterra Distribution" as the distributor located at 2021 Aeroplex Drive, North Elkhart, Indiana 46514, which is Cheng's principal place of business.

17.    The WF-9855 battery charger is certified by Underwriters Laboratories (UL) for conforming to UL standard UL STD.458. The WF-9855 also conforms to standards of the Canadian Standards Association (CSA) and specifically to CSA 22.2 No. 107.1-01 that applies to power supplies. The WF-9855 is packaged with marks belonging to UL and CSA indicating these certifications.

**CHENG'S PATENT**

18.    On October 15, 2020, Cheng filed a utility patent application, which was granted and issued on September 18, 2024, as U.S. Patent No. 12,113,377 (the "'377 Patent").[1] A copy of

---

[1]    Plaintiff suspects and is continuing its investigation concerning Defendant's potential infringement of all of the '377 Patent's claims. Plaintiffs reserve the right to seek leave to amend this pleading to add additional counts of patent infringement.

the '377 Patent is attached as **Exhibit 1**.

19.     The WF-9855 battery charger practices the '377 Patent.

20.     The '377 Patent relates to an improved battery charger configured to automatically identify a battery type being charged and optimize battery charging for the detected battery type. The '377 Patent describes a system and method for identifying a battery type based on time-related behavior of charge current and voltage near the end of a charging cycle. Specifically, different battery types have distinguishable characteristics that can be extrapolated from voltage and current near the end of the charging cycle, which the systems and methods of the '377 Patent employ to determine the battery type. This solves the problem of existing systems that rely on simple voltage measurements, which have overlapping characteristics across different types of batteries. Therefore, these existing systems cannot distinguish different types of batteries. Accordingly, these existing systems cannot implement charge profiles specific to a type of battery. Instead, the battery charger, and related method of the '377 Patent implement a charging profile for the identified battery type to safely charge and extend the life the battery.

21.     The '377 Patent claims "identifying the battery to be charged as a first battery type when, after the charge current begins to decrease near charge completion, a rate at which the charge current decreases or a rate at which the charge voltage increases is greater than a threshold value." '377 Patent, Cl. 13, lns. 4-8 (Claim 10) and Cl. 14, lns. 43-46 (Claim 20). A lead-acid battery charging waveform produced by the WF-9855 battery charger over a charge cycle, including the charge current and charge voltage, is provided as **Exhibit 2**. Notably, the lead-acid battery charging waveform produced by the WF-9855 battery is similar to FIG. 2 of the '377 Patent, which discloses employing this waveform to identify the battery as lead-acid. Exhibit 1 at page 2.

22.     The '377 Patent claims "identifying the battery to be charged as a second battery

5

type when, after the charge current begins to decrease near charge completion, the rate at which the charge current decreases or the rate at which the charge voltage increases is less than the threshold value." '377 Patent, Cl. 13, lns. 9-14 (Claim 10) and Cl. 14, lns. 47-50 (Claim 20). A lithium battery charging waveform produced by the WF-9855 battery charger over a charge cycle, including the charge current and charge voltage, is provided as **Exhibit 3**. Notably, the lithium battery charging waveform produced by the WF-9855 battery is similar to FIG. 1 of the '377 Patent, which discloses employing this waveform to identify the battery as lithium. Exhibit 1 at page 2. As illustrated in the charging waveforms of the lithium and lead-acid batteries, the charge voltage and rate at which the charge current decreases are distinct for each battery. As disclosed and claimed by the '377 Patent, these waveforms are employed to determine the type of battery.

23.    The '377 Patent claims "controlling one or more of voltage or current of the controlled voltage source applied to the battery to be charged based on identification of the battery type of the battery to be charged as either the first battery type or the second battery type." '377 Patent, Cl. 13, lns. 15-19 (Claim 10). The charging waveforms of the lithium and lead-acid batteries illustrate voltage and current changing at the end of the charge cycles representative of controlling charge of the battery as the type of battery identified as either the first (lead-acid) or second (lithium) battery type. **Exhibits 2 and 3.**

24.    The '377 Patent claims "setting a charging profile based on the identified battery type of the battery to be charged as either the first battery type or the second battery type; and charging the battery to be charged as a function of the charging profile." '377 Patent, Cl. 14, lns. 51-55 (Claim 20). The charging waveforms of the lithium and lead-acid batteries illustrate voltage and current changing at the end of the charge cycles representative of charging of the battery as the type of battery identified as either the first (lead-acid) or second (lithium) battery type

6

according to a set charging profile. **Exhibits 2 and 3.**

25.    Claim 10 of the '377 Patent recites:

A battery charger comprising:

a controlled voltage source configured to apply electrical power to a battery to be charged;

means for identifying the battery to be charged as a first battery type when, after the charge current begins to decrease near charge completion, a rate at which the charge current decreases or a rate at which the charge voltage increases is greater than a threshold value;

means for identifying the battery to be charged as a second battery type when, after the charge current begins to decrease near charge completion, the rate at which the charge current decreases or the rate at which the charge voltage increases is less than the threshold value; and

means for controlling one or more of voltage or current of the controlled voltage source applied to the battery to be charged based on identification of the battery type of the battery to be charged as either the first battery type or the second battery type.

26.    Claim 20 of the '377 Patent recites:

A method of charging a battery, the method comprising:

monitoring one or more of charging voltage or charging current of a battery to be charged;

identifying the battery to be charged as a first battery type when, after the charge current begins to decrease near charge completion, a rate at which the charge voltage increases is greater than a threshold value;

identifying the battery to be charged as a second battery type when, after the charge current begins to decrease near charge completion, the rate at which the charge voltage increases is less than the threshold value;

setting a charging profile based on the identified battery type of the battery to be charged as either the first battery type or the second battery type; and

charging the battery to be charged as a function of the charging profile.

## DEFENDANT'S PATENT INFRINGEMENT

27.     Defendant infringes the '377 Patent in violation of 35 U.S.C. § 271 by making, using, offering to sell, and/or importing at least the following model of battery charger starter sold under the brand name BESTRENOGY that has charging features claimed in the '377 Patent: 9855-AD-CB Battery Charger 9800 Series (the "Infringing Model").

28.     The Infringing Model meets each element of at least claim 10 of the '377 Patent, as provided below:

29.     The Infringing Model has a controlled voltage source configured to apply electrical power to a battery to be charged. For example, the Amazon page for the Infringing Model states that the Infringing Model "is an advanced three-level automatic conversion charger with automatic detection technology that can detect battery types and automatically adjust charging modes." Amazon Page at 2. The Amazon Page is attached as **Exhibit 4**.

30.     The Infringing Model has means for identifying the battery to be charged as a first battery type when, after the charge current begins to decrease near charge completion, a rate at which the charge current decreases or a rate at which the charge voltage increases is greater than a threshold value. Again, the Amazon Page for the Infringing Model states that the Infringing Model has "automatic detection technology that can detect battery types." Amazon Page at 2. A lead-acid (first type) battery charging waveform produced by the Infringing Model over a charge cycle, including the charge current and charge voltage, is provided as **Exhibit 5**.

31.     The Infringing Model has means for identifying the battery to be charged as a second battery type when, after the charge current begins to decrease near charge completion, the rate at which the charge current decreases or the rate at which the charge voltage increases is less than the threshold value. Again, the Amazon Page for the Infringing Model states that the

Infringing Model has "automatic detection technology that can detect battery types." Amazon Page at 2. A lithium (second type) battery charging waveform produced by the Infringing Model over a charge cycle, including the charge current and charge voltage, is provided as **Exhibit 6.** As illustrated in the Infringing Model charging waveforms of the lithium and lead-acid batteries, the charge voltage and rate at which the charge current decreases are distinct for each battery.

32.     The Infringing Model has means for controlling one or more of voltage or current of the controlled voltage source applied to the battery to be charged based on identification of the battery type of the battery to be charged as either the first battery type or the second battery type. For example, the Amazon Page for the Infringing Model states the Infringing Model has automatic detection technology that can detect battery types and automatically adjust charging modes: 13.2 VDC "float" mode, 13.6 VDC "absorption" mode, and 14.4 VDC "bulk" mode. Amazon Page at 2. The Infringing Model charging waveforms of the lithium and lead-acid batteries illustrate voltage and current changing at the end of the charge cycles representative of controlling charge of the battery as the type of battery identified as either the first (lead-acid) or second (lithium) battery type. **Exhibits 5 and 6.**

33.     The Infringing Model has identical "means" recited by claim 10 of the '377 Patent, as the Infringing Model uses the same board design, components, and construction as the WF-9855 battery charger disclosed by the '377 Patent. As reproduced below, **Exhibits 7-8** show that the Infringing Model has the same components and design as the WF-9855 battery charger, which are employed to perform the same functions as recited by claim 10 of the '377 Patent for reasons provided by at least paras. 1-33 of this Complaint.





WF-9855 Battery Charger

Infringing Model

34.    Similarly, the Infringing Model performs a process that meets each element of at least claim 20 of the '377 Patent, as provided below:

35.    The Infringing Model performs monitoring one or more of charging voltage or charging current of a battery to be charged. For example, the Amazon Page of the Infringing Model states that "[t]he electronic current limiter automatically shuts off the power supply under overload or short circuit conditions." Amazon Page at 2. Further, the Amazon Page of the Infringing Model states that the Infringing Model "detect[s] battery types." Amazon Page at 2.

36.    The Infringing Model performs identifying the battery to be charged as a first battery type when, after the charge current begins to decrease near charge completion, a rate at which the charge voltage increases is greater than a threshold value. Again, the Amazon Page for the Infringing Model states that the Infringing Model has "automatic detection technology that can detect battery types." Amazon Page at 2. A lead-acid (first type) battery charging waveform produced by the Infringing Model over a charge cycle, including the charge current and charge

11

voltage, is provided in **Exhibit 5.**

37.     The Infringing Model performs identifying the battery to be charged as a second battery type when, after the charge current begins to decrease near charge completion, the rate at which the charge voltage increases is less than the threshold value. Again, the Amazon Page for the Infringing Model states that the Infringing Model has "automatic detection technology that can detect battery types." Amazon Page at 2. A lithium (second type) battery charging waveform produced by the Infringing Model over a charge cycle, including the charge current and charge voltage, is provided as **Exhibit 6.** As illustrated in the Infringing Model charging waveforms of the lithium and lead-acid batteries, the charge voltage and rate at which the charge current decreases are distinct for each battery.

38.     The Infringing Model performs setting a charging profile based on the identified battery type of the battery to be charged as either the first battery type or the second battery type; and charging the battery to be charged as a function of the charging profile. For example, the Amazon Page for the Infringing Model states the Infringing Model has automatic detection technology that can detect battery types and automatically adjust charging modes: 13.2 VDC "float" mode, 13.6 VDC "absorption" mode, and 14.4 VDC "bulk" mode. Amazon Page at 2. The Infringing Model charging waveforms of the lithium and lead-acid batteries illustrate voltage and current changing at the end of the charge cycles representative of controlling charge of the battery as the type of battery identified as either the first (lead-acid) or second (lithium) battery type. **Exhibits 5 and 6**.

## DEFENDANTS' DECEPTIVE ACTS

39.     The Infringing Model is marketed with a name of "wf-9855," which is nearly identical to Cheng's earlier patented and sold WF-9855 battery charger and consistent with

Cheng's broader product naming conventions. Amazon Page at 3.

40.      The Infringing Model is produced by the Defendant in China. However, the Infringing Model is packaged with contact information that substantially resembles contact information that Cheng packages with the WF-9855 battery charger, as shown in **Exhibit 9** reproduced below. Specifically, Defendant intentionally misspells "Arterra" as "Artera" by removing a letter, and intentionally copied Cheng's contact information, but simply changed one number of the street address, zip code, area code, phone number, and fax number. On information and belief, the company "Artera" provided by the defendant does not exist, is not located at the provided address, and does not use the provided phone or fax numbers.



41.      On information and belief, the Infringing Model is not certified by UL. On information and belief, Bestrenogy nor any of its products are listed within a UL database. However, the Infringing Model lists the same UL standard UL STD.458 as provided with the WF-9855 battery charger. The UL standard label of the Infringing Model is copied from the label of the WF-9855 battery charger as illustrated in **Exhibit 9**, reproduced below:



42.      The Infringing Model also includes a CSA certification that substantially resembles the CSA certification of the WF-9855. On information and belief, Defendant intentionally

13

misspells the CSA standards by changing only two numbers. On information and belief, the alleged CSA Standard used by the Defendant does not exist, or is not related to a power supply or converter. The CSD standard label of the Infringing Model is copied from the label of the WF-9855 battery charger and slightly altered as illustrated in **Exhibit 9**, reproduced below



**FIRST COUNT**
**(For Direct Infringement of the '377 Patent [35 U.S.C. § 271(c)])**

43.     Cheng repeats and incorporates by reference into this count the allegations set forth above in Paragraphs 1 through 42 as though fully set forth in this count.

44.     In acting or failing to act as described above, Defendant has in the past and continues to directly infringe one or more claims of the '377 Patent by importing, manufacturing, testing, using, offering to sell, and/or selling within the United States or importing into the United States its Infringing Model.

45.     By way of example and not limitation, claim 10 of the '377 Patent claims protection over a battery charger that has means for detecting a battery type and controlling one or more of voltage or current applied to the battery to be charged based on identification of the battery type.

46.     The Infringing Product is a battery charger that has means for detecting a battery type and controlling one or more of voltage or current applied to the battery to be charged based on identification of the battery type.

47.     As advertised, the Infringing Product includes means for "automatic detection technology that can detect battery types and automatically adjust charging modes." Amazon Page

at 2.

48.     On information and belief, Defendant's use, sales, offers for sale, distribution of, marketing, and/or testing of the Infringing Product within the United States has resulted in the direct infringement of the '377 Patent.

49.     Defendant's acts of infringement of the '377 Patent were undertaken and continue to be undertaken without permission or license from Cheng.

50.     Upon information and belief, Defendant derived and received, and will continue to derive and receive, gains, profits, and advantages from the above-described acts of infringement in an amount not presently known to Cheng. Cheng has been damaged as a result of Defendant's infringing conduct and is entitled to monetary relief in an amount to be determined at trial.

51.     Cheng will also continue to suffer severe and irreparable harm for which Cheng has no adequate remedy at law. Defendant's continued infringement will only encourage others to infringe on the '377 Patent thereby diluting the reputation of and consumer trust in the Cheng and Arterra brands. As a result, Cheng seeks a permanent injunction from this Court prohibiting Defendant from infringing on the '377 Patent.

52.     Cheng is also entitled to its attorneys' fees and costs upon prevailing in this action due to the exceptional nature of this dispute under 35 U.S.C. § 285.

53.     Further, Cheng is entitled to treble damages and/or exemplary damages because of Defendant's knowing, intentional, and/or willful conduct under 35 U.S.C. § 284.

### SECOND COUNT
**(For Induced Infringement of the '377 Patent [35 U.S.C. § 271(c)])**

54.     Cheng repeats and incorporates by reference into this count the allegations set forth above in Paragraphs 1 through 42 as though fully set forth in this count.

55.     In acting or failing to act as described above, Defendant has in the past and

continues to induce others to infringe one or more claims of the '377 Patent by encouraging consumers to automatically detect and control voltage with the Infringing Product.

56.    By way of example and not limitation, claim 20 of the '377 Patent claims protection over methods of changing a charge profile based on detection of a battery type, which safely charges different types of batteries.

57.    As advertised, the Infringing Model automatically detects battery types and automatically adjusts charging modes (e.g, a charge profile).

58.    On information and belief, based on its business model, Defendant imported, offered to sell, and sold the Infringing Model specifically because it knew that the Infringing Model can be employed to perform the method over which the '377 Patent claims protection.

59.    Defendant had actual notice, no later than the filing of this complaint, that its importation, manufacturing, offering to sell, and sale of the Infringing Model would lead to the infringement of the '377 Patent if Defendant's customers use the Infringing Model as recommended by Defendant.

60.    On information and belief, Defendant's importation, manufacturing, offering to sell, and sale of the Infringing Model has resulted in the direct infringement of the '377 Patent by its customers.

61.    Defendant's continued importation, manufacturing, offering to sell, and sale of the Infringing Model, despite actual notice of the fact that the same infringes upon the '377 Patent, constitutes willful and intentional infringement of the '377 Patent.

62.    Defendant's acts of infringement of the '377 Patent were undertaken and continue to be undertaken without permission or license from Cheng.

63.    Upon information and belief, Defendant actively and knowingly intended to aid,

abet, direct, encourage, or otherwise induce its customers' direct infringement of the '377 Patent.

64.    Upon information and belief, Defendant derived and received, and will continue to derive and receive, gains, profits, and advantages from the above-described acts of infringement in an amount not presently known to Cheng. Cheng has been damaged as a result of Defendant's infringing conduct and is entitled to monetary relief in an amount to be determined at trial.

65.    Cheng will also continue to suffer severe and irreparable harm for which Cheng has no adequate remedy at law. Defendant's continued infringement will only encourage others to infringe on the '377 Patent. As a result, Cheng seeks a permanent injunction from this Court prohibiting Defendant from infringing on the '377 Patent.

66.    Cheng is also entitled to its attorneys' fees and costs upon prevailing in this action due to the exceptional nature of this dispute under 35 U.S.C. § 285.

67.    Further, Cheng is entitled to treble damages and/or exemplary damages because of Kappa Nutrition's knowing, intentional, and/or willful conduct under 35 U.S.C. § 284.

### THIRD COUNT
### (False Advertising [15 U.S.C. § 1125(a)(1)(A)])

68.    Cheng repeats and incorporates by reference into this count the allegations set forth above in Paragraphs 1 through 42 as though fully set forth in this count.

69.    Defendant uses a name, symbol, false designation of origin, or misleading representation of fact to deceive as to the origin of the Defendant's Infringing Model.

70.    Defendant uses a name, false designation of origin, or misleading representation of fact to deceive as to the affiliation, connection, or association of the Defendant with Cheng.

71.    Defendant uses a symbol, false or misleading representation of fact to deceive as to the approval of Defendant's goods, services, or commercial activities by standards organizations.

72.    Defendant willfully and knowingly used, and continues to use, misleading or false

information in interstate commerce for the purpose of selling products.

73.     As a proximate result of Defendant's actions, Cheng has suffered, and continues to suffer immediate and irreparable harm. Cheng has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

74.     Cheng is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's deception and, unless Defendant are permanently enjoined, Cheng will suffer irreparable harm.

75.     Cheng is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith violated § 1125(a).

### FOURTH COUNT
### (False Advertising [15 U.S.C. § 1125(a)(1)(B)])

76.     Cheng repeats and incorporates by reference into this count the allegations set forth above in Paragraphs 1 through 42 as though fully set forth in this count.

77.     Defendant willfully and knowingly used, and continues to use words, terms, names, and symbols in commercial advertising or promotion, that misrepresents the nature, characteristics, qualities or geographic origin of the Infringing Model.

78.     Defendant willfully and knowingly used, and continues to use false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising and promotion, misrepresents the nature, characteristics, qualities or of the Defendant's commercial activities.

79.     As a proximate result of Defendants' actions, Cheng has suffered, and continues to suffer immediate and irreparable harm. Cheng has also suffered, and continues to suffer, damages,

including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

80.     Cheng is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's deception and, unless Defendant is permanently enjoined, Cheng will suffer irreparable harm.

81.     Cheng is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith violated § 1125(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Cheng respectfully prays that this Court enter judgment against Defendant, as follows:

1.     For an Order adjudging Defendant to have infringed the '377 Patent;

2.     For an Order adjudging Defendant to have willfully infringed the '377 Patent;

3.     For an Order enjoining Defendant from directly or indirectly infringing on the '377 Patent;

4.     For an order adjudging Defendant to have committed deceptive acts harming Cheng;

5.     For an order enjoining Defendant from committing deceptive acts that harm Cheng;

6.     For an Order requiring Defendant to deliver up and/or destroy any and all products infringing, directly or indirectly, the '377 Patent or the in its possession together with any means for producing the same;

7.     For an accounting of all of Defendant's gains, profits, and advantages derived by Defendant's infringement on the '377 Patent, and for an award of monetary damages adequate to

compensate Defendant for Defendant's lost profits as a result of the past infringement and any continuing or future infringement up until judgment is entered, but in no event less than reasonable royalty, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement on the '377 Patent;

8.    For an accounting of all of Defendant's gains, profits, and advantages derived by Defendant's use of any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, and for an award of monetary damages adequate to compensate Cheng for the acts of false advertising described in this Complaint, or, upon Defendant's election, statutory damages;

9.    Judgment against Defendant for a permanent injunction granted pursuant to 15 U.S.C. § 1116, enjoining Defendant and its affiliates, partners, representatives, servants, employees, attorneys and all persons in active concert, privity or participation with Defendant from competing in the United States unfairly with Defendant; from falsely designating the origin of the Infringing Model, as distributed in the United States and/or by "Arterra" or "Artera," and/or from an Indiana address substantially similar to that of Cheng's WF-9855 battery charger; from engaging in deceptive trade practices in the United States; and from further engaging in unfair competition in the United States; and specifically:

a)    using in any manner the names including but not limited to "Arterra," "WF-9855," "wf," contact information associated with Cheng, and symbols, including, but not limited to CSA and UL certification, or any other symbol, name, or information as to be likely to deceive or cause mistake in connection with the manufacture for sale, sale, or offer for sale of products in the United States;

20

b)    committing any acts, including use of names, symbols, and contact information in the United States, calculated to cause purchasers to believe that Defendant's products are sponsored or otherwise affiliated with Cheng;

10.    Requiring Defendant, in accordance with 15 U.S.C. § 1116(a), to file with the Court, and serve upon Cheng, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of such injunction;

11.    For an award of treble damages and/or exemplary damages because of Defendant's willful misconduct under 35 U.S.C. §§ 284 and/or 285;

12.    For an Order that this is an exceptional case and for an award of attorneys' fees and costs under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117;

13.    For an award of pre-judgment interest at the maximum legal rate in an amount to be proven at time of trial; and

14.    For any other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cheng demands a trial by jury on all issues triable to a jury.

Dated: June 25, 2025            Respectfully submitted,

**Vorys, Sater, Seymour and Pease LLP**

 /s/  *Tristan H. Riley*
Tristan H. Riley (Indiana Bar No. 38644-15)
Great American Tower
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone:    513-723-4000
Fax:        513-723-4056
Email:     thriley@vorys.com

Aaron M. Williams (*pro hac vice forthcoming*)
Andrew D. Fleming (*pro hac vice forthcoming*)
Michael M. Stojsavljevic (*pro hac vice forthcoming*)
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Phone:    216-478-6100
Fax:       216-478-6060
Email:    amwilliams@vorys.com
             adfleming@vorys.com
             mmstojsavljevic@vorys.com

*Counsel for Plaintiff*